RECEIVED
SEP 29 2015
U.S. District Court
Eastern District of MO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

SCOTT JENKINS, )
RHONDA ALEXANDROPOULOS, )
Plaintiffs, )
)
VS. )
)
BRUCE BURKEY, )
THE TAYLOR LAW FIRM, P.C., )
JOICE BASS, )
JENNIFER HOSTETLER, )
LEWIS ROCA ROTHGERBER LLP, )
Defendants. )

## COMPLAINT

**COMES NOW** Plaintiffs Scott Jenkins and Rhonda Alexandropoulos for their Complaint against Defendants and states as follows:

## PARTIES

At all times relevant herein, Scott Jenkins and Rhonda Alexandropoulos were residents of St. Charles County, Missouri. At all times relevant herein, Scott Jenkins was the Manager of CSRESL LLC and was authorized to act on behalf of CSRESL LLC.

At all times relevant herein, Defendant Bruce Burkey was a resident of Effingham County, Illinois

At all times relevant herein, Defendant Taylor Law Firm was located in the City of Effingham., Illinois. At all times relevant herein, Defendant Bruce Burkey was acting within the scope of his agency for Taylor Law Firm.

At all times relevant herein, Defendant Joice Bass was a resident of Clark County, Nevada

At all times relevant herein, Defendant Jennifer Hostetler was a resident of Clark County, Nevada

At all times relevant herein, Defendant Lewis Roca Rothgerber LLP Law Firm was located in Clark

1

County, Nevada. At all times relevant herein, Defendants Joice Bass and Jennifer Hostetler were acting within the scope of their agency for Lewis Roca Rothgerber LLP Law Firm.

## JURISDICTION & VENUE

Jurisdiction exists pursuant to "Diversity of Citizenship" on a case exceeding $75,000, and Plaintiffs' claims arise from actions committed in the States of Illinois, Missouri, and Nevada, as Defendants have committed tortuous and criminal acts in the States of Illinois, Missouri, and Nevada injuring the plaintiffs residing in Missouri.

Venue in the Federal Court for the Eastern Missouri District is proper under the US Code of Civil Procedure, as this action has been filed in the Federal Court District of the Plaintiff's residence who has been joined in good faith and with probable cause, and that the acts out of which these causes of action arose in the United States.

## GENERAL ALLEGATIONS BURKEY

In September of 2011, Burkey using his authority as an Illinois licensed attorney, drafted a fraudulent Nevada legal document (exhibit A), citing a non existent Nevada Statute, with the purpose to remove Jenkins from his position as a manager of CSRESL LLC, a Nevada LLC (the LLC). Burkey committed this act without any notice to Jenkins, as well as any authority from the LLC. The creation of such a Nevada legal document would constitute the crime of unauthorized practice law (UPL), in both Nevada and Illinois, as well as knowingly citing a statute that didn't exist, constituting the crime of fraud. At no time did Burkey possess a license to practice law in the State of Nevada, but led his clients to believe he was authorized to create Nevada legal documents and was knowledgeable of Nevada law by creating a Nevada legal document (**exhibit A**) and citing a Nevada Statute which never existed. Burkey needed to fabricate this fictitious Nevada statute since no Nevada statute existed to back up the substance of his illegally created Nevada document. Based upon sworn testimony from his clients, Jenkins' daughters Christina Jenkins and Rebecca Frausto, during consequential Nevada litigation resulting from Burkey's illegal conduct, both stated that

Burkey represented himself to them as possessing legal authority to create Nevada legal documents.

Burkey then instructed his clients to sign the illegally created and fraudulent document to remove their father as manager of the LLC. In December 2011, according to information Jenkins has obtained from the Nevada Secretary of State, Burkey personally then mailed and submitted the fraudulent documents to the Nevada Secretary of State to remove Jenkins as manager of the LLC. Burkey instructed Jenkins' daughters to sign the documents. Burkey then mailed and submitted the fraudulent documents to the Nevada Secretary of State according to written replies Jenkins obtained from an agent with the Nevada Secretary of State. Burkey filed these documents without any notice to Scott Jenkins, as well as any authority from the LLC.

In April 2012 Burkey instructed and assisted his clients to seize a bank account belonging to the LLC of which Jenkins, in his role as manager, was responsible for and Burkey instructed his clients to remove funds from the LLC's bank account. In April 2012 Burkey sent documents to the United States Postal Service (USPS) to divert the LLC rent monies from the USPS that were currently being sent to Jenkins as manager of the LLC headquartered in Saint Charles, MO. The Nevada litigation revealed that during this time Burkey had an unpaid legal bill in excess of $10,000 from his clients. This debt constituted a financial motive for Burkey's actions by instructing his clients to participate in illegal acts and obtain funds from the LLC for payment of Burkey's $10,000 past due bill.

During the Nevada litigation it was discovered Burkey possessed private and confidential internal e-mails originating from a Denver law firm Jenkins had hired to assist him with the administration of his deceased Aunt's estate that Jenkins had been named the executor in his Aunt's Will. These e-mails were internal, originating, and terminating between Jenkins' attorneys and other employees within Jenkins' hired Denver law firm, and subject to attorney client privilege. The subject matter of these e-mails dealt entirely with Jenkins' deceased Aunt's estate, specifically the funding of a trust account controlled by the firm for the purpose of conducting a mediation in the upcoming months. These matters were completely unrelated to anything involving the LLC and Jenkins' role as manager of the LLC that Burkey was taking illegal actions

3

against.

While it's unknown at this time how Burkey obtained possession of these internal firm e-mails, the e-mails were clearly labeled confidential, privileged under Federal interstate privacy laws, and strictly forbid any unauthorized possession and Burkey clearly had possession of them. The labeling contained in the e-mails clearly instructed anyone who was not the intended recipient to destroy them and immediately notify the sender of such unintended receipt. Burkey failed to adhere to any of these warnings. Even worse, instead of destroying them as instructed in the e-mails, Burkey altered them from their original form to make it seem as if Jenkins had done something illegal and was involving his daughter Christina, then presented them to Jenkins' daughters in their altered form to convince Jenkins' daughters their father had acted inappropriately and illegally in the administration of his Aunt's estate and involved Christina his youngest daughter in these acts.

This motive for Burkey altering the e-mails was primarily to convince Jenkins' daughter Christina, to join with her sister and go against her father and participate with Burkey's instructions. Most importantly Burkey wanted Christina to sign the fraudulent Nevada document he created removing Jenkins as manager of the LLC to involve all of Jenkins' daughters, which allowed Burkey to include the the word "unanimous" in the document, and must have felt this gave the document a better appearance of being legal. The e-mails Burkey altered provided for a way to get Christina to distrust her father by scaring her into believing her father had implicated her in purported illegal activities during the administration of his Aunt's estate, and that she could be associated with criminal conduct by her father in regards to his Aunt's estate as the e-mails Burkey altered implied. As further proof of Burkey's illegal intentions, he even convinced Christina that by her father implicating her in purported illegal activity in the administration of his Aunt's Estate, she would lose her recently obtained nursing license that she had worked so hard for years to obtain.

By investigating the public record involving Jenkins' Aunt's estate, Burkey discovered an angry cousin of Jenkins who believed they didn't receive their fair share due to Jenkins' handling of his Aunt's

4

estate. Burkey was able to use the altered e-mails to further convince Christina this angry cousin would be coming after not only her father for additional estate money, but Christina too, since Christina had received funds from his Aunt's estate to help pay for Christina's nursing education.

During Burkey's extensive investigation into Jenkins' Aunt's estate he discovered a mediation had taken place in which Jenkins documents and other proof had determined Jenkins had never done anything wrong or committed any criminal activities. After the mediation had taken place a Denver Court ordered all matters involving Jenkins' Aunt estate settled by agreement of all Jenkins' family members who were a party to the estate. As with all settlements there was a "hold harmless" clause which would have prevented any action against Jenkins by any angry cousin, as well as any parties related to Jenkins heirs which would have included Christina. However Burkey purposely and intentionally withheld this important settlement information exonerating Jenkins' from all wrong purported wrong doings from Jenkins' daughters even though he would have had to obtain this information from the same public filings with the Denver Court he had obtained all the other information from he was using against Jenkins.

Burkey then forwarded the altered e-mails to Jenkins' daughter's attorneys in the Nevada litigation to use in their motions as exhibits in an attempt to paint a negative picture of Jenkins harming his daughters to the Nevada Court. Once Jenkins became aware of the e-mails Burkey had submitted, Jenkins forwarded them to his Denver firm where they originated, who stated they were puzzled how Burkey ever obtained them, since they had never been sent outside the firm, but more importantly they realized they had been altered from their original form and notified Jenkins of such alterations.

In numerous letters to Jenkins' attorneys Burkey routinely violated attorney ethical standards by attempting to extort a settlement in a civil matter by threatening Jenkins with purported criminal consequences if he did not agree to go along with his illegal actions and settlement offers. This in spite of the fact Burkey never once proved any criminal or civil wrong doing by Jenkins.

During the Nevada litigation it was discovered Burkey possessed Jenkins' personal credit report from

TransUnion. This confidential report was mailed, addressed to, and intended to be seen by Scott Jenkins only, and was of the type only sent to the person of reference in the credit report by way of TransUnion's legal obligation to comply with Federal Law to furnish a credit report upon request from the referenced person in the report, in this case by Scott Jenkins and Scott Jenkins only. According to TransUnion Burkey possessed no authority to obtain or have in his possession this type of report, since only Jenkins' himself could have requested this type of credit report from TransUnion and Jenkins never requested it. Burkey as an educated attorney knew he had no authority to obtain or possess this type of confidential information, and should have either destroyed it or forwarded it to Scott Jenkins destroying all copies and any information obtained from the report. But instead Burkey used it to further convince Jenkins' daughters their father was in bad financial shape convincing them they needed to act upon his illegal and fraudulent recommendations. Burkey also produced it to Jenkins's daughter's Nevada attorneys to be used as an exhibit in the Nevada as a detriment to be used against Jenkins in that litigation instead of destroying it as required by law.

Burkey repeatedly slandered, defamed, and degraded Jenkins in legal correspondence to Jenkins' attorneys in an attempt to get them to abandon their representation of Jenkins by attempting to make them believe Jenkins had acted criminally and lead them to believe Burkey's actions was only an attempt to repair damage to the LLC caused through Jenkins' criminal actions, even though Burkey had never obtained any authority to act on behalf of the LLC. Ultimately neither Burkey or the Nevada attorneys were able produce any evidence of any criminal acts by Jenkins or that the LLC was harmed by any acts of Jenkins.

In a meeting held in February 2012, in which Burkey requested Jenkins attendance in person, Burkey made false criminal accusations against Jenkins to his daughters and x-wife who were also asked to attend by Burkey. Burkey would not allow Jenkins to defend himself against such accusations at the meeting, cutting Jenkins off when Jenkins tried to speak, and threatened to divulge false information about Jenkins and his business dealings to others if Jenkins didn't agree with Burkey's actions to remove him as manager of the LLC and relinquish all control of the LLC to his daughters. Unbeknownst to Jenkins at the time of the

6

meeting, Burkey had already removed him as manager 6 months prior to this meeting in September 2011 with no authority to do so from the LLC.

At all times Burkey acted personally and as an agent of The Taylor Firm, P.C. and used the US Mail to transmit his illegal and fraudulent documents assist in carrying out his illegal acts.

### GENERAL ALLEGATIONS BASS AND HOSTETLER

During subsequent Nevada litigation, resulting from Burkey's actions, two Nevada attorneys by the names of Joice Bass and Jennifer Hostetler entered their appearances and filed a counter complaint against Jenkins on behalf of their clients, Jenkins' daughters in a Nevada Court. Litigating was taking place in Nevada regarding the LLC because the LLC was registered in the State of Nevada. At the time both Bass and Hostetler worked for the Nevada law firm Lewis Roca Rothgerber LLP. During litigation in Nevada Bass and Hostetler wrote threatening letters and e-mails (**exhibits B & C**). Bass stated she was advising her clients to file criminal charges against Jenkins, his wife Rhonda Alexandropoulos, Jenkins' Missouri attorney Jeffrey Duke, and his mother's estate attorney Kevin Kasper, to the IRS, FBI, Missouri Attorney General, Saint Charles County Sheriff's Department, Missouri Bar, among others if Jenkins didn't agree to their settlement terms.

Bass and Hostetler threatened to file illegal Lis Pendens on all real estate owned by the LLC of which Jenkins was the manager if Jenkins didn't agree to their settlement terms. Later they actually filed Lis Pendens on two pieces of Illinois real estate keeping Jenkins from doing his job as manager and borrowing money to fund operations of the LLC.

After the Nevada case had been dismissed with prejudice by the Nevada court upon Hostetler's request, Hostetler breached a confidential settlement agreement by filing public documents that divulged an agreement had been executed. Also in her filings she divulged confidential information contained within the settlement agreement which constituted a breach of the settlement agreement. Hostetler's purpose was an attempt to get the Nevada Court to reopen the same case the court earlier dismissed with prejudice, even

7

though the Nevada Court did not obtain jurisdiction over any settlement agreement in it's dismissal order by Hostetler's own request. By trying to reopen the case Hostetler continued to harm Jenkins to force him to spend more funds and time to answer matters that had already been dismissed by the court. Harming Jenkins from these actions was a breach of the settlement agreement Hostetler was a party to.

Furthermore, since the settlement agreement in it's entirety involved out of state property contracts and legal issues, Hostetler violated Nevada UPL laws, as well as other state UPL statutes by advising her clients on out of state Illinois legal matters. She attempted negotiations with Jenkins' Nevada attorney who repeatedly refused to get involved in the out of state matters of which he was not licensed to practice. When Jenkins' Nevada counsel refused to discuss out of state legal matters, Hostetler filed documents in a Nevada Court in an attempt to force litigation on out of state legal matters in Nevada, the only state Hostetler is licensed to practice law.

At all times Bass and Hostetler acted personally and as agents of Lewis Roca Rothgerber LLP, and used the US Mail to transmit their illegal and fraudulent documents assisting in carrying out their illegal acts.

## DAMAGES

Due to the defendant's illegal actions Jenkins has suffered actual damages in personal expenses over $200,000, to rectify and reverse the defendant's actions.

As a direct result of the defendant's actions, Jenkins has suffered distress and emotional damages from the loss of love and contact with his daughters as well as his only grandchild born during the time of this litigation.

As a direct result of Bass and Hostetler's actions, Alexandropoulos has suffered distress and emotional damages believing she would lose her job in the health care field and standing amongst her peers by Bass and Hostetler advising her clients to report Alexandropoulos to law enforcement authorities for purported crimes with no evidence to back up such allegations.

## COUNT I
*(The crimes of Fraud and Fraudulent Misrepresentation - Burkey)*

8

For Count I of his Complaint against Defendant Burkey, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

Defendant Burkey made false statements in a document he created titled Action By Majority Members, a Nevada legal document citing a Nevada statute that never existed..

Upon information and belief at the time, Jenkins' daughters signed the document upon Burkey's direction believing the document to be legal, true, and proper which resulted in the illegal removal of Jenkins as manager of the LLC.

As a result of this fraud Jenkins suffered from being removed from his management position.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT II
*(The crime of conspiracy and assisting in Theft - Burkey)*

For Count II of his Complaint against Defendant Burkey Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

Defendant Burkey created documents for the purpose to allow his clients to seize an account belonging to the LLC and take money from that account.

Defendant Burkey created documents for the purpose to divert rent monies belonging to the LLC from the USPS.

As a result of this theft Jenkins suffered in his job as manager by not having funds to operate the LLC.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT III
*(The crime of Unauthorized Practice of Law and Illegal Possession of Personal Credit File Information - Burkey)*

For Count III of his Complaint against Defendant Burkey Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

Defendant Burkey created the Nevada legal document without a license to practice law in the State of Nevada which is a violation of Illinois and Nevada Law. As a result of this unauthorized practice of law Jenkins suffered as being removed from his management position of the LLC.

Defendant Burkey possessed Jenkins' personal credit file without his permission and transmitted it to others, a violation of Federal identity and credit file laws..

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT IV
*(The crime of violating the Illinois Consumer Fraud And Deceptive Business Practice Act (815 ILCS 505/1 et seq. - Burkey)*

For Count IV of his complaint against Defendant Burkey, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

At all times relevant herein, Defendant Burkey was a "person" within the meaning of 815 ILCS 505/1 *et seq.*

That the misrepresentations, as alleged herein, were material and done with intent that Plaintiff's daughters relied upon the concealment, suppression and/or omission of such material facts, all contrary to 815 ILCS 505/1 *et seq.* which led to the detriment of the Plaintiff.

That the misrepresentations, as alleged herein, were deceptively fraudulent and done with intent that Plaintiff's daughters relied upon the fraudulent misrepresentation, all contrary to 815 ILCS 505/1 *et seq.* which led to the detriment of the Plaintiff.

That the fraudulent misrepresentations and material misrepresentations were acts performed during the course of trade and commerce. That the Plaintiff's daughters did rely on the material misrepresentations and fraudulent statements, which led to the detriment of the Plaintiff.

But for the misrepresentation of material facts and fraudulent deception via the representations in the Nevada legal document created by the defendant, the Plaintiff's daughters would not have signed the document creating damages and injuries to the Plaintiff.

As a direct and proximate result of the material misrepresentation of material facts and fraudulent deception via the Nevada legal document, Jenkins was damaged when he was removed as manager of the LLC causing damages to Jenkins.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT V
*(Intentional Infliction of Emotional Distress - Burkey)*

For Count V of his Complaint against Defendant Burkey, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Burkey was extreme and outrageous and went beyond all possible bounds of decency so as to be regarded as intolerable in a civilized community when the Nevada legal document was created without authority to do so under Nevada law and fraudulently creating and citing a Nevada Statute that doesn't exist, then presenting it to Jenkins' daughters as being legal and proper to sign. Defendant Burkey was aware of the extensive time and expense Jenkins had invested into his relationship with his daughters and knew, with a high degree of probability, that the certain loss of contact between Jenkins and his daughters would cause Jenkins severe emotional distress.

The conduct of Defendant Burkey was done with the intent to inflict severe emotional distress on

11

Jenkins, or alternatively was done under circumstances where Burkey knew that there was at least a high probability that the fraudulent deception and material misrepresentations would cause severe emotional distress to Jenkins.

As a direct and proximate result of Defendant Burkey's, extreme and outrageous actions, Plaintiff Jenkins has suffered, and continues to suffer extreme mental distress, humiliation, anguish, as well as emotional and physical injuries.

Wherefore Plaintiff Jenkins requests that the judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT VI
### *(Negligent Infliction of Emotional Distress - Burkey)*

For Count VI of his Complaint against Defendant Burkey Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Burkey negligently inflicted severe emotional distress on Jenkins.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT VII
### *(The crimes of Blackmail, Extortion, Coercion, and Defamation - Burkey)*

For Count VII of his Complaint against Defendant Burkey Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

In numerous letters Burkey accused Jenkins of participating in criminal activities and if Jenkins did not agree to his client's settlement terms Jenkins' activities would be divulged to the authorities. During an in person meeting held at Burkey's office, with Jenkins' daughters attending, Burkey alleged criminal activities on the part of Jenkins to his daughters, harming Jenkins' relationship with his daughters, with no

12

proof to back up such purported allegations at that time or at any time.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT VIII

*(Intentional Interference With A Prospective Economic Advantage - Burkey)*

For Count VIII of his Complaint against Defendant Burkey, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

At the time of the actions by the defendant Plaintiff was operating CSRESL LLC as a viable business.

As previously alleged, Defendant Burkey knew that Plaintiff had a reasonable expectation of earning monies as a result of his job as manager of CSRESL LLC.

Defendant Burkey, intentionally, and without justification, interfered with Plaintiff ability to carry out his duties as manager for CSRESL LLC by authoring the Illegal Nevada Manager Removal Document, presented and induced Jenkins' daughters to sign it, then mailed and filed it with the Nevada Secretary of State all to the Plaintiffs' detriment.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT IX

*(The crime of Mail Fraud and Sending Threatening Communications by Mail - Burkey)*

For Count IX of his Complaint against Defendant Taylor Law Firm, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

At all times the defendant Burkey used the US Mail to transmit his illegal and threatening documents alleged in this complaint.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Burkey in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT X
*(Negligent Supervision - Taylor Law Firm)*

For Count X of his Complaint against Defendant The Taylor Law Firm, P.C. Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

Defendant The Taylor Law Firm, P.C. must operate with reasonable and ordinary care to supervise its agents and employees in the performance of their work for The Taylor Law Firm, P.C..

At all times relevant herein, Bruce Burkey held a position that allowed Burkey to speak as an agent on behalf of The Taylor Law Firm, P. C..

Burkey as an agents of The Taylor Law Firm, P.C., breached the duty of care owed by The Taylor Law Firm, P.C. by making intentionally false, misleading, and unjustifiable misstatements of fact as alleged herein, which ultimately led to the detriment of the Plaintiff.

As a direct and proximate result of The Taylor Law Firm, P.C. failure to exercise ordinary care in the supervision of it's agent Burkey, the Plaintiff suffered damages as alleged herein.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant The Taylor Law Firm, P.C. in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XI
*(The crimes of Blackmail, Extortion, Coercion, Defamation, Unauthorized Practice of Law, and Illegal Lis Pendens Filings - Bass)*

14

For Count X I of their Complaint against Defendant Bass Plaintiffs Jenkins and Alexandropoulos states as follows:

All paragraphs preceding cited in this count.

In letters and e-mails Bass accused Jenkins and Alexandropoulos of participating in criminal activities and if Jenkins did not agree to her client's settlement terms, Jenkins and Alexandropoulos, as well as Jenkins conspiring with his Missouri Attorneys, such activities would be divulged to criminal a regulatory authorities. Bass never produced any proof to back up any of her allegations of such purported crimes by either Jenkins or Alexandropoulos.

Bass threatened to file Lis Pendens on all of the LLC's real estate in an attempt to prevent Jenkins from carrying out his managerial duties of the LLC in violation of Illinois and Missouri law. Defendant Bass filed or threatened to file illegal Lis Pendens in Illinois and Missouri without a license to practice law in Illinois and Missouri, which is a violation of Illinois, Missouri, and Nevada Law.

Bass threatened to turn Alexandropoulos into criminal authorities which would cause defamation and loss of her job in the health care field and hurt her good standing amongst her peers.

Wherefore Plaintiffs Jenkins and Alexandropoulos requests that a judgment be entered on their behalf against Defendant Bass in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XII
*(Intentional Infliction of Emotional Distress - Bass)*

For Count XII of their Complaint against Defendant Bass, Plaintiffs Jenkins and Alexandropoulos states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Bass was extreme and outrageous and went beyond all possible bounds of decency so as to be regarded as intolerable in a civilized community when Bass sent threatening letters and

e-mails to Jenkins and Alexandropoulos through Jenkins and his attorney.

Defendant Bass was aware of the extensive time and expense Jenkins had invested into his relationship with his daughters and knew, with a high degree of probability, that the certain loss of contact between Jenkins and his daughters would cause Jenkins severe emotional distress.

Defendant Bass was aware of the extensive time and expense Alexandropoulos had invested into her career, relationship with her peers, and knew with a high degree of probability that the threats and allegations would result in severe emotional distress from jeopardy to her career and standing amongst her peers.

The conduct of Defendant Bass was done with the intent to inflict severe emotional distress on Jenkins and Alexandropoulos, or alternatively was done under circumstances where Bass knew that there was at least a high probability that the fraudulent deception and material misrepresentations would cause severe emotional distress to Jenkins and Alexandropoulos.

As a direct and proximate result of Defendant Bass' extreme and outrageous actions, Plaintiffs Jenkins and Alexandropoulos have suffered, and continues to suffer extreme mental distress, humiliation, anguish, and along with emotional and physical injuries.

Wherefore Plaintiffs Jenkins and Alexandropoulos requests that a judgment be entered on their behalf against Defendant Bass in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XIII
*(Negligent Infliction of Emotional Distress - Bass)*

For Count XIII of their Complaint against Defendant Bass Plaintiffs Jenkins and Alexandropoulos states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Bass negligently inflicted severe emotional distress on Jenkins and Alexandropoulos.

Wherefore Plaintiff Jenkins Alexandropoulos requests that a judgment be entered on their behalf against Defendant Bass in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XIV
*(The crime of Mail Fraud and Sending Threatening Communications by Mail - Bass)*

For Count XIV of their Complaint against Defendant Bass, Plaintiffs Jenkins and Alexandropoulos states as follows:

All paragraphs preceding cited in this count.

At all times the defendant Bass used the US Mail to transmit her illegal and threatening documents alleged in this complaint.

Wherefore Plaintiff Jenkins and Alexandropoulos requests a judgment be entered on their behalf against Defendant Bass in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XV
*(The crimes of Blackmail, Extortion, Coercion, Defamation, Unauthorized Practice of Law, and Illegal Lis Pendens Filings - Hostetler)*

For Count XV of his Complaint against Defendant Hostetler Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

In numerous letters and e-mails Hostetler accused Jenkins of contempt of court by alleging Jenkins did not participate in mediation proceedings in good faith and if he did not agree to her terms she would instigate expensive litigation through filings prohibited by law in the Nevada Court.

Hostetler filed or threatened to file illegal Lis Pendens in Illinois and Missouri, a violation of Illinois and Missouri law. Defendant Hostetler filed or threatened to file illegal Lis Pendens in Illinois and Missouri without a license to practice law in Illinois or Missouri, a violation of Illinois, Missouri, and Nevada Law.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant

Hostetler in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XVI
### *(Intentional Infliction of Emotional Distress - Hostetler)*

For Count XVI of his Complaint against Defendant Hostetler Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Hostetler was extreme and outrageous and went beyond all possible bounds of decency so as to be regarded as intolerable in a civilized community when Hostetler sent threatening letters and e-mails to Jenkins. Defendant Hostetler was aware of the extensive time and expense Jenkins had invested into his relationship with his daughters and knew, with a high degree of probability, that the certain loss of contact between Jenkins and his daughters would cause Jenkins severe emotional distress.

The conduct of Defendant Hostetler was done with the intent to inflict severe emotional distress on Jenkins, or, alternatively, was done under circumstances where Hostetler knew that there was at least a high probability that the fraudulent deception and material misrepresentations would cause severe emotional distress to Jenkins.

As a direct and proximate result of Defendant Hostetler's, extreme and outrageous actions, Plaintiff Jenkins has suffered, and continues to suffer, extreme mental distress, humiliation, anguish, and emotional and physical injuries.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Hostetler in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XVII
### *(Negligent Infliction of Emotional Distress - Hostetler)*

For Count X VII of his Complaint against Defendant Hostetler Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

The conduct of Defendant Hostetler negligently inflicted severe emotional distress on Jenkins.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant Hostetler in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

### COUNT XVIII
*(Breach of Contract - Hostetler)*

For Count XIII of his Complaint against Defendant Hostetler Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

Hostetler breached the settlement contract by filing public documents that divulged a confidential settlement agreement had been executed.

Hostetler breached the settlement contract by divulging confidential information contained within the settlement agreement.

Hostetler breached the settlement contract by continuing to harm Jenkins to force him to spend more costs to answer matters that had already been dismissed by the court which was prohibited in the settlement contract.

Wherefore Plaintiff Jenkins requests that the judgment be entered on his behalf against Defendant Hostetler in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

### COUNT XIX
*(The crime of Mail Fraud and Sending Threatening Communications by Mail- Hostetler)*

For Count XIX of his Complaint against Defendant Hostetler, Plaintiff Jenkins states as follows:

All paragraphs preceding cited in this count.

At all times the defendant Hostetler used the US Mail to transmit her illegal and threatening documents alleged in this complaint.

Wherefore Plaintiff Jenkins requests that a judgment be entered on his behalf against Defendant

Hostetler in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

## COUNT XX
*(Negligent Supervision - Lewis Roca Rothgerber LLP)*

For Count XX of his Complaint against Defendant Lewis Roca Rothgerber LLP, Plaintiffs Jenkins and Alexandropoulos states as follows:

All paragraphs preceding cited in this count.

Defendant Lewis Roca Rothgerber LLP Law Firm must operate with reasonable and ordinary care to supervise it's agents and employees in the performance of their work for Lewis Roca Rothgerber LLP Law Firm.

At all times relevant herein, Bass and Hostetler held a position that allowed Bass and Hostetler to speak as an agent on behalf of Lewis Roca Rothgerber LLP Law Firm.

Bass and Hostetler as agents of Lewis Roca Rothgerber LLP Law Firm, breached the duty of care owed by Lewis Roca Rothgerber LLP Law Firm by making intentionally false, misleading, and unjustifiable misstatements of fact as alleged herein, which ultimately led to the detriment of the Plaintiffs.

As a direct and proximate result of v Law Firm failure to exercise ordinary care in the supervision of it's agent Bass and Hostetler, the Plaintiffs suffered damages as alleged herein.

Wherefore Plaintiffs Jenkins and Alexandropoulos requests that a judgment be entered on their behalf against Defendant Lewis Roca Rothgerber LLP Law Firm in a sum in excess of Seventy Five Thousand Dollars ($75,000) for actual, compensatory, and punitive damages, and cost of suit herein.

Respectfully Submitted,

Scott Jenkins
1408 Nutmeg Drive
Saint Charles, MO  63303
618-335-3874

and   Rhonda Alexandropoulos
1408 Nutmeg Drive
Saint Charles, MO  63303
618-267-7723